J-S44002-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: K.C.H., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.T., MOTHER | No. 3796 EDA 2016 |

Appeal from the Decree Entered December 1, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):
CP-51-AP-0001066
CP-51-DP-0002641-2015

BEFORE: BENDER, P.J.E., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED AUGUST 29, 2017**

J.T. ("Mother") appeals from the decree entered December 1, 2016, that granted the petition filed by the Philadelphia County Department of Human Services, Children and Youth Division ("DHS") to involuntarily terminate her parental rights to her minor child, K.C.H. ("Child") (born in September of 2013), pursuant to sections 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act, 23 Pa.C.S. §§ 2101-2938. After careful review of the record and applicable law, we affirm.

The trial court set forth the following summary of the factual and procedural background of this case in its Pa.R.A.P. 1925(a) opinion:

> On October 2, 2015, [DHS] received a General Protective Service (GPS) report alleging Mother abandoned [Child] with his paternal great-grandmother on September 28, 2015. Maternal aunt was contacted on September 30, 2015[,] to care for [Child], where he remained in her care. There were growing concerns, since [the] summer of 2015, regarding Mother['s] leaving [Child] with maternal aunt or paternal great-grandmother for extended periods of time with no contact. The report alleged [that] maternal aunt visited Mother's home and the building appeared

to be abandoned. The report further stated Mother suffered from schizophrenia and was not receiving treatment nor taking medication. Mother reportedly used drugs. [Child's] sibling had been previously placed with DHS. Mother was pregnant with twins. The report was determined to be valid.

DHS learned on October 1, 2015, Mother was violent and caused damage to the homes of paternal great-grandmother and maternal aunt when she attempted to retrieve [Child].

On October 5, 2015, DHS visited the home of maternal aunt and found the allegations of damage to be valid.

On October 5, 2015, DHS obtained an Order of Protective Custody (OPC) for [Child] to ensure his safety. [Child] remained in the home of maternal aunt.

A Shelter Care Hearing for [Child] was held on October 7, 2015. The [c]ourt ordered the OPC lifted and the temporary commitment to stand. DHS was ordered to make a referral for kinship care services.

At that time[,] Mother's whereabouts were unknown to DHS. Father was incarcerated at the Detention Center (DC) on charges related to domestic violence.

On October 15, 2015, an Adjudicatory Hearing for [Child] was held before the Honorable Vincent L. Johnson, who discharged the temporary commitment, adjudicated [Child] dependent, and committed him to DHS.

On October 15, 2015, an Aggravated Circumstances hearing for [Child] was held. The [c]ourt determined that aggravated circumstances exited [*sic*] as to Mother[,] pursuant to the involuntary termination of her parental rights of [Child's] sibling on March 4, 2015. The [c]ourt also found aggravated circumstances existed as a result of sibling who was the victim of physical abuse resulting in serious bodily injury, sexual violence, and aggravated neglect by Mother. The [c]ourt acted pursuant to Mother's admission of guilt to the charges of felony aggravated assault and endangering the welfare of children. The [c]ourt ordered that efforts continue to be made to preserve the family and reunify [Child] with Mother.

On January 4, 2016 and March 28, 2016, Permanency Review Hearings for [Child] were held. [Child] remained committed to DHS custody.

On May 3, 2016, a Permanency Review Hearing was held for [Child] … before the Honorable Richard J. Gordon, who ordered [Child] remain committed to DHS. Judge Gordon ordered [Child] be referred to BHS for a consultation and evaluation. Mother and Father were referred to the Achieving Reunification Center (ARC). Mother and Father were granted supervised visits as arranged by the parties.

On May 13, 2016, Mother gave birth to [Child's] sibling.

On May 14, 2016, DHS received a GPS report which alleged on May 13, 2016, Mother gave birth to [Child's] sibling and was expected to be discharged from Hospital of the University of Pennsylvania (HUP) on May 15, 2016. Mother lacked stable housing and was involved with the Family Shelter Support Team (FaSST) Connections for assistance with obtaining housing and other social support. The report further alleged Mother was unemployed. Mother was diagnosed with bipolar disorder, depression and anxiety. Mother was assigned a therapist and a psychiatrist and received treatment at John F. Kennedy (JFK) Behavioral Health Center. Mother was scheduled to resume mental health treatment on May 17, 2016. The report also stated Mother had been incarcerated for assaulting a child. The report was determined to be valid.

On May 16, 2016, DHS visited [Child's] sibling at HUP and learned she was healthy. DHS contacted Mother who provided names and contact information for possible placement resources for [Child's] sibling. Mother stated she was in the process of obtaining housing.

On May 16, 2016, DHS obtained an OPC for [Child's] sibling and placed her in the care of her maternal cousin, where she remained.

A Shelter Care Hearing for [Child's] sibling on May 19, 2016[,] was held before [the] Honorable Lyris F. Younge. The [c]ourt lifted the OPC and ordered the temporary commitment to DHS to stand. Judge Younge further ordered Mother to have liberal supervised visits with [Child's] sibling in maternal cousin's home.

On May 25, 2016, an Adjudicatory Hearing for [Child's] sibling was held before Judge Younge[.] Judge Younge discharged the temporary commitment to DHS, adjudicated [Child's] sibling dependent, and committed [him] to DHS. Judge Younge ordered Mother to visit Clinical Evaluation Unit (CEU) for a full drug and alcohol screen, a dual-diagnosis assessment and monitoring. Mother was granted weekly supervised visits at the agency. Mother was ordered to contact the agency 24 hours in advance of Mother's intended visit or the visit would be cancelled.

On May 25, 2016, Judge Younge found that aggravated circumstances existed as to Mother but held the decision pursuant to efforts made toward reunification in abeyance.

On June 22, 2016, a Permanency Review Hearing for [Child's] sibling was held before Judge Younge, who ordered that [Child's] sibling remain committed to DHS. Judge Younge suspended Mother's visitation, and ordered that no further efforts need be made to reunify [Child's] sibling with Mother.

On July 25, 2016, a Permanency Review Hearing for [Child] and [Child's] sibling was held before Judge Younge. Mother was referred to Achieving Reunification Center (ARC) … for services[;] however[,] [she] was discharged for lack of participation. Mother failed to comply with her referral to CEU for drug and alcohol testing and assessment. Judge Younge ordered [Child] and [Child's] sibling remain committed to DHS.

The matter was … listed on a regular basis before [j]udges of the Philadelphia Court of Common Pleas, Family Court Division – Juvenile Branch[,] pursuant to section 6351 of the Juvenile Act, 42 Pa.C.S.[] § 6351, and evaluated for the purpose of reviewing the permanency plan of [Child].

In subsequent hearings, the Dependency Review Orders reflect the [c]ourt's review and disposition as a result of evidence presented, primarily with the goal of finalizing the permanency plan.

On December 1, 2016, during the Termination of Parental Rights Hearing for [Child], the [c]ourt found by clear and convincing evidence that Mother's parental rights as to [Child] should be terminated pursuant to the Juvenile Act. Furthermore, the [c]ourt held it was in the best interest of [Child] that the goal be changed to [a]doption.

Trial Court Opinion ("TCO"), 4/5/17, at 1-3.

On December 8, 2016, Mother filed a timely notice of appeal, along with a timely Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. In her brief, Mother presents the following issues for our review:

1. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [Mother,] pursuant to 23 Pa.C.S.[] [§] 2511(a)(1)[,] where [M]other presented evidence that she substantially met her [Family Service Plan ("FSP")] goals and is able to perform her parental duties[?]

2. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [Mother], pursuant to 23 Pa.C.S.[] [§] 2511(a)(2)[,] where [M]other presented evidence that she has remedied her situation by attending parenting and anger management classes, and continuing to receive mental health treatment[?] Mother has the present capacity to care for [Child].

3. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [Mother], pursuant to 23 Pa.C.S.[] [§] 2511(a)(5)[,] where evidence was provided to establish that [Child] was removed from the care of his mother, and that [M]other is now capable of caring for her child[?]

4. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [Mother], pursuant to 23 Pa.C.S.[] [§] 2511(a)(8)[,] where evidence was presented to show that [M]other is now capable of caring for her child since she has completed parenting and anger management and continues her mental health treatment[?]

5. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [Mother], pursuant to 23 Pa.C.S.[] [§] 2511(b)[,] where evidence was presented that established [Child] lived [with] [M]other and had a parental bond with [M]other[?]

Mother's Brief at 7.

- 5 -

We review an appeal from the termination of parental rights under the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. ***In re: R.J.T.***, … 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. ***Id.***; ***R.I.S.***, 36 A.3d [567,] 572 [(Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. ***Id.***; *see also **Samuel Bassett v. Kia Motors America, Inc.***, … 34 A.3d 1, 51 (Pa. 2011); ***Christianson v. Ely***, … 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. ***Id.***
>
> As we discussed in ***R.J.T.***, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. ***R.J.T.***, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. ***In re Adoption of Atencio***, … 650 A.2d 1064, 1066 (Pa. 1994).

***In re Adoption of S.P.***, 47 A.3d 817, 826-27 (Pa. 2012).

In termination cases, the burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re S.H.*, 879 A.2d 802, 806 (Pa. Super. 2005). We have previously stated:

> The standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003) (internal quotation marks omitted).

Termination of parental rights is governed by section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interest of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citing 23 Pa.C.S. § 2511; other citations omitted).

This Court must agree with only one subsection of 2511(a), in addition to section 2511(b), in order to affirm the termination of parental rights. *See*

- 7 -

*In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Herein, we review the decree pursuant to sections 2511(a)(1) and (b), which provide as follows:

> **(a) General Rule.—**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
> >
> > …
>
> **(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1) and (b).

As we addressed the application of section 2511(a)(1) in *In re C.M.S.*, 832 A.2d 457, 461 (Pa. Super. 2003), we noted:

> To satisfy Section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties.

*Id.* (quoting ***Matter of Adoption of Charles E.D.M., II***, 708 A.2d 88, 91 (Pa. 1998)). In ***C.M.S.***, we further acknowledged the following statement by our Supreme Court:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.
>
> Because a child needs more than a benefactor, parental duty requires that a parent 'exert himself to take and maintain a place of importance in the child's life[.']

***C.M.S.***, 832 A.2d at 462 (quoting ***In re Burns***, 379 A.2d 535, 540 (Pa. 1977)).

Contrary to what the record reflects, Mother avers that she substantially complied with all of her FSP goals and suggests that she has a bond with Child which is evidenced by her continued visitation with Child. Mother's Brief at 10, 15. However, Mother's own testimony at the termination hearing revealed that, over the course of the prior year, she missed more than half of her scheduled supervised visits. N.T. Hearing, 12/1/17, at 66. Moreover, despite Mother's assertion that she has attended parenting, domestic violence, and anger management programs and that she continues with her mental health treatment, the court determined that

Mother's treatment has been inconsistent. *Id.* at 106. The court added, "Even though [Mother] has had some treatment and may have made some form of progress, [Mother] is still having to deal with issues where she's showing aggression, she's busting out windows … [T]hat's not appropriate behavior, and it raises a safety concern as to whether … [Child] would be safe in the care of [Mother]." *Id.*

In further support of its finding that Mother failed to perform her parental duties, which established grounds for termination under 23 Pa.C.S. § 2511(a)(1), the trial court stated:

> [T]he social worker testified Mother had a history of domestic violence issues and physical abuse of a child. The [c]ourt took judicial notice of a finding of Aggravated Circumstances in October [of] 2015, based on involuntary termination of a prior child who was the victim of serious bodily injury, sexual violence, and aggravated neglect by Mother. The [c]ourt also took judicial notice of orders for suspension of Mother's visitation of another child due to concerns for the child['s] safety as a result of the aggravated circumstances finding. The social worker did not feel it was appropriate to modify Mother's visits with [Child] to unsupervised visits. Testimony of the social worker revealed Mother's visits with [Child] did not expand due to Mother's failure to be compliant with her Single Case Plan (SCP) objectives. According to [the] social worker's testimony, Mother had failed to show consistency in mental health treatment and failed to complete anger management classes. Furthermore, [the] social worker's testimony revealed she believed [Child] would be at risk for harm and danger if reunification with Mother occurred.
>
> A parent has an affirmative duty to act in her children's best interest. "Parental duty requires that the parent not yield to every problem, but must act affirmatively, with good faith interest and effort, to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances." *In re Dale A., II*, 683 A.2d 297, 302 (Pa. Super. 1996). In

reference to the parental contact, "to be legally significant, the contact must be steady and consistent over a period of time, contribute to the psychological health of the child, and must demonstrate a serious intent on the part of the parent to recultivate a parent-child relationship, and must demonstrate and [*sic*] willingness and capacity to undertake the parenting role." ***In re D.J.S.***, 737 A[.]2d 283, 286 (Pa. Super. 1999) (quoting ***In re Adoption of Hamilton***, 549 A.2d 1291, 1295 (Pa. Super. 1988)).

In the present matter, [Child] had been in DHS care for fourteen (14) months. Testimony revealed Mother admitted to acts of domestic violence in July of 2016[,] while engaged in domestic violence therapy and counseling. The social worker testified there were ongoing concerns about Mother's mental health stability. A Clinical Evaluation Report (CEU) provided to the [c]ourt stated Mother tested positive for drugs twice in July [of] 2016.

TCO at 4-5 (citations to record omitted). After careful review, we discern that the court's determinations are well-supported by the record.

After we determine that the requirements of section 2511(a) are satisfied, we proceed to review whether the requirements of subsection (b) are met. ***See In re Adoption of C.L.G.***, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*). This Court has stated that the focus in terminating parental rights under section 2511(a) is on the parent, but it is on the child pursuant to section 2511(b). ***Id.*** at 1008.

In reviewing the evidence in support of termination under section 2511(b), our Supreme Court recently stated as follows:

[I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "intangibles such as love, comfort, security, and stability." ***In re K.M.***, 53 A.3d 781,

791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1992)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

Here, Mother merely provides that she lived with Child for over a year and that she continues to visit with Child when permitted, in support of her argument that termination of her parental rights does not serve Child's physical and emotional needs and welfare. *See* Mother's Brief at 18. The record clearly belies Mother's claim.

At the termination hearing, DHS testified that Child has been diagnosed with adjustment disorder and is receiving trauma-focused play therapy, "due to a history of exposure to domestic violence and potential concerns regarding separation anxiety from the kinship caregiver[.]" N.T. Hearing at 59. DHS indicated that Child suffers from the following potentially trauma-related symptoms: "outbursts when the caregiver leaves him, staring off into space, physical aggression, intrusive memories, difficulty sleeping, and some other behavior." *Id.*

The trial court concluded:

In the instant matter, the testimony of [the] social worker established that [Child] would not suffer any irreparable emotional harm if Mother's parental rights were terminated. Testimony of the social worker stated [Child] had positive interaction and bonded with his caregiver. The social worker testified [that] [Child's] caregiver has been successful in behavioral management of [Child]. Furthermore, testimony

> established that [Child's] stability would be disrupted if [Child] was removed from the caregiver's home.
>
> The [c]ourt found the social worker's testimony [regarding] Mother to be credible and effectively detailed.

TCO at 6 (citations to record omitted).

As there is competent evidence in the record that supports the trial court's credibility and weight assessments regarding Child's needs and welfare, and the absence of any bond with Mother, we conclude that the court did not abuse its discretion as to section 2511(b). *See S.P.*, 47 A.3d at 826-27. Accordingly, we affirm the decree terminating Mother's parental rights to Child.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/29/2017

- 13 -